**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ROBERT G. BOWMAN,

                                        Plaintiff,

      - v -                                                Civ. No. 8:19-CV-97
                                                              (BKS/DJS)

HONORABLE CECILY L. MORRIS, *Judge, New York
State Family Court: County of St. Lawrence*,

                                        Defendant.

**APPEARANCES:**                            **OF COUNSEL:**

ROBERT G. BOWMAN
Plaintiff, *Pro Se*
104 Prospect Street
Gouverneur, NY 13642

**DANIEL J. STEWART**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER

      The Clerk has sent for review a civil Complaint filed by Plaintiff Robert Bowman. Dkt. No. 1, Compl. Plaintiff has not paid the filing fee, but instead submitted a Motion to Proceed *in forma pauperis* ("IFP"). Dkt. No. 2, IFP App. By separate Order, this Court granted Plaintiff's Application to Proceed IFP. Now, in accordance with 28 U.S.C. § 1915(e), the Court will *sua sponte* review the sufficiency of the Complaint.

### I. INTRODUCTION

      The following facts are drawn from the *pro se* Complaint as well as the third Department decision of *St. Lawrence Cty. Support Collection Unit ex rel. Bowman v.*

*Bowman*, 152 A.D.3d 899 (N.Y. App. Div.), *appeal dismissed sub nom. St. Lawrence Cty. Support Collection Unit v. Bowman*, 30 N.Y.3d 1032 (2017), which is referred to and specifically referenced in the Complaint.[1] *See* Compl. at ¶¶ 32-35. Plaintiff is the subject of a St. Lawrence County Family Court order of child support. Compl. at ¶¶ 15-24; *Bowman*, 152 A.D. 3d at 899. At issue in this proposed federal action is a 2003 Family Court consent order regarding child support, a December 2007 consent order, and a November 2011 modification order. *Id.* Further, in 2015, Plaintiff's ex-wife, through the St. Lawrence County Support Collection Unit, commenced a proceeding in state court alleging that Plaintiff willfully failed to make payments required by the November 2011 order. *Id.* As a result of that action, a money judgment was entered against Plaintiff. *Id.*

In March 2016, Plaintiff filed an *ex parte* motion to show cause in St. Lawrence Family Court asking the court to vacate the 2003, 2007, and 2011 support orders. *Id.* The Family Court denied Plaintiff's motion on timeliness grounds, as well as his failure to establish a reasonable excuse for his default. *Id.* Plaintiff appealed that denial to the Appellate Division, Third Judicial Department. The Third Department rejected Plaintiff's appeal upon the grounds that an appeal of an *ex parte* motion to issue an order to show cause is not available as of right, and that Plaintiff failed to provide an argument for relief on the merits pursuant to CPLR 5704(a). *Bowman*, 152 A.D.3d at 899. Thereafter, the Court of

---

[1] The Court therefore takes judicial notice of the Family Court orders and decisions referenced in the Complaint. *Trombley v. O'Neill*, 929 F. Supp. 2d 81, 103 (N.D.N.Y. 2013) (taking judicial notice of custody order of the Family Court); *Villanueva v. City of New York*, 2010 WL 1654162, at *5 (S.D.N.Y. Apr. 14, 2010) ("[W]e consider the court orders and hearing transcripts from the underlying Family Court proceedings. . . .").

Appeals dismissed Plaintiff's appeal to that Court, noting that the order appealed from does not finally determine the proceedings within the meaning of the Constitution. *Bowman*, 30 N.Y. 3d 1032. Having failed at all levels of state court review, Plaintiff now commences this action pursuant to 42 U.S.C. § 1983. While the Complaint specifically asks for declaratory and injunctive relief, it is clear that the primary focus of what Plaintiff seeks is an invalidation of the previously issued support orders. *See* Compl. at ¶ 46 ("As a direct and approximate (sic) result of Defendant[']s violation of plaintiff's federal right under 42 USC 667(b)(2), plaintiff has suffered severe . . . financial injuries.").

## II.  DISCUSSION

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

In reviewing a *pro se* complaint, this Court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (emphasis

in original) (citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 679 (quoting FED. R. CIV. P. 8(a)(2)). Furthermore, Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id*. (internal quotation marks and alterations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 Fed. Appx. 102, 104 (2d Cir. 2009).

"Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without

granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). However, where the grounds for dismissal offer no basis for curing the defects in the pleading, dismissal with prejudice is appropriate. *Kunz v. Brazill*, 2015 WL 792096, at *3 (N.D.N.Y. Feb. 25, 2015).

### A. Jurisdiction

It is well settled that a federal court, whether trial or appellate, is obligated to notice on its own motion the basis for its jurisdiction. *City of Kenosha, Wisconsin v. Bruno*, 412 U.S. 507, 512 (1973); *see also Alliance of Am. Ins. v. Cuomo*, 854 F.2d 591, 605 (2d Cir. 1988) (challenge to subject matter jurisdiction cannot be waived); FED. R. CIV. P. 12(h)(3) (court may raise basis of its jurisdiction *sua sponte*). When subject matter jurisdiction is lacking, dismissal is mandatory. *United States v. Griffin*, 303 U.S. 226, 229 (1938); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). In light of Plaintiff's *pro se* status, the Court will *sua sponte* assess whether subject matter jurisdiction is present in this case. *Kruglov v. Copart of Connecticut, Inc.*, 2018 WL 1399332, at *3 (N.D.N.Y. Jan. 16, 2018), *report and recommendation adopted*, 2018 WL 1399337 (N.D.N.Y. Mar. 19, 2018).

In the present case, Plaintiff cites to a violation of federal statutory and constitutional law relating to child support awards, and seeks redress under the Civil Rights Statute, 42 U.S.C. § 1983. The jurisdictional issues in this case are therefore multifaceted. Does the

federal statute at issue create rights enforceable under section 1983? Does the First Amendment right of access cause of action state a claim? Even if the answer to either of these questions is yes, are there exceptions to the Court's jurisdiction which preclude the Court from assuming jurisdiction over the claims?

### B. The Proposed Laws Action

42 U.S.C. § 1983 makes actionable not only constitutional violations but also violations of those rights secured by the "laws." However, not every violation of a federal law is enforceable under section 1983, and it is incumbent upon a prospective 1983 plaintiff to assert a violation of a federal "right" and not simply that he or she benefits from the federal law. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). The Supreme Court's most recent laws decision emphasizes that, to be enforceable by a private plaintiff under section 1983, the statute must establish an "unambiguously conferred right." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) (holding that the Federal Education Rights Privacy Act did not support a section 1983 claim as the provisions of the statute relied upon "contain no rights-creating language, they have an aggregate, not individual, focus, and they serve primarily to direct the . . . distribution of public funds . . . .").

The Supreme Court has provided specific guidance regarding the federal statute at issue in the present lawsuit, Title IV-D of the Social Security Act, 42 U.S.C. §§ 651-669b. In *Blessing*, five mothers due child support payments brought a section 1983 suit claiming that they had a right to have the State of Arizona substantially comply with the federal mandate regarding its child-support enforcement programs, especially as it relates to support

payments. *Blessing v. Freestone*, 520 U.S. at 333-34. The plaintiffs, in justifying their claim, relied upon the statute's provision that in the event that the State had not substantially complied with the dictates of the federal law, the Secretary of the Department of Health and Humans Services could reduce the federal grant to that particular state. *Id.* at 335; 42 U.S.C. § 609(a)(8); 45 C.F.R. § 305.20 (1995).

The Supreme Court agreed that the plaintiffs in the action benefitted from the federal statute, and further, that Arizona's efforts under the statute were "less than stellar," but, nevertheless, it did not authorize a section 1983 claim based upon the facts presented. In reviewing the remedial scheme, the Supreme Court concluded:

> Far from creating an *individual* entitlement to services, the [substantial compliance] standard is simply a yardstick for the Secretary to measure the *systemwide* performance of the State's Title IV-D program. Thus, the Secretary must look to the aggregate services provided by the State, not to whether the needs of any particular person have been satisfied. . . . Moreover, even upon a finding of substantial noncompliance, the Secretary can merely reduce the State's AFDC grant by up to five percent; she cannot, by force of her own authority, command the State to take any particular action or to provide any services to certain individuals. In short, the substantial compliance standard is designed simply to trigger penalty provisions that increase the frequency of audits and reduce the State's AFDC grant by a maximum of five percent. As such, it does not give rise to individual rights.[2]

*Blessing v. Freestone*, 520 U.S. at 343-44 (emphasis in the original).

In the present case, Plaintiff seeks to avoid the effect of a judgment for failure to pay

---

[2] While the Supreme Court in *Blessing* did not foreclose every section 1983 claim predicated upon Title IV-D, it emphasized that a potential plaintiff must identify a particularized portion of the statute and establish that it did in fact create individually enforceable rights. As an example, the Court highlighted the potential situation where the State did collect support payments but then failed to pass through a portion of the payment to the party entitled to it by § 657(b)(1) of the Act. *Id.* at 345-46.

child support, and to declare illegal the child support obligation identified by the Family Court. Plaintiff points to 42 U.S.C. § 667, "State guidelines for child support awards," and notes that it creates a rebuttable presumption that a support award should be within such guidelines. 42 U.S.C. § 667(b)(2). That Statute states in pertinent part, as follows:

> **(a) Establishment of guidelines; method**
> Each State, as a condition for having its State plan approved under this part, must establish guidelines for child support award amounts within the state. . . . .
> **(b) Availability of guidelines; rebuttable presumption**
> **(2)** There shall be a rebuttable presumption, in any judicial or administrative proceeding for the award of child support, that the amount of the award which would result from the application of such guidelines is the correct amount of child support to be awarded. A written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case, *as determined under criteria established by the State*, shall be sufficient to rebut the presumption in that case.

*Id.* (emphasis added).

In his Complaint, Plaintiff does not allege that the State of New York did not create such guidelines, or that the support order applied to him does not in fact fall within those guidelines; indeed a careful reading of his Complaint confirms that it does. Compl. at ¶ 43 ("Plaintiff's[] application for the issuance of an order to show cause, was legally sufficient to overcome the presumptive child support award. . ."). He maintains instead that the Family Court erred when it failed to accept his rebuttal argument[3] that the guidelines should not

---

[3] Plaintiff presented this argument by way of an *ex parte* order to show cause motion after a default judgment had already been entered.

apply in his case upon the grounds that they are unjust or inappropriate. Compl. at ¶¶ 36-48.[4]

The Complaint, as it presently stands, is insufficient to confer jurisdiction upon the federal courts. The provisions of Title IV-D relied upon by Plaintiff do not create an individualized right to have a federal court review his support order. While the statute refers to the establishment of child support award guidelines, it makes clear that they are exactly that: guidelines to which exceptions can be made. The statute does indicate that in the event that the state were to apply an award outside the presumptive guidelines, that it should set forth its reasons for doing so, relying upon guidelines to be set by the state. 42 U.S.C. § 667(b)(2). The statute says nothing more, and certainly provides no guidance for federal courts to calculate a below-guideline support order. In other words, the statutory provision sets forth general standards concerning support award guidelines applicable to the states, but it does not create individualized federal rights. At no point does the statute state, or even intimate, that an affected parent has a claim in federal court based upon that parent's belief that a particular state child support order is in error. *De La Cruz v. Irizarry*, 946 F. Supp. 2d 244, 254 (D.P.R. 2013) ("Here, the statute does not contain any rights-creating language or focus on individuals. Rather, the statute simply imposes a requirement on states to periodically review their child support guidelines. *See* § 667. Therefore, no private right of action is available to Plaintiffs to enforce § 667 by way of § 1983."); *see also Jones v. State*, 2014 WL 4630933, at *1 (W.D. Mo. Sept. 16, 2014) ("[T]he Family Support Act of 1988,

---

[4] Plaintiff also makes a state law claim that, under the Family Court Act, a cap of five hundred dollars should have been placed upon any child-support order based upon his financial condition. Compl. at ¶ 56 (citing Family Court Act § 413(1)(g)).

Pub.L. 100-485, required the states to enact mandatory, or presumptively correct, guidelines for awards of child support in order to continue to participate in the federal Aid to Families with Dependent Children Program; and to operate child support enforcement programs. The Act makes no provision for suit by private parties in federal court.").

Accepting Plaintiff's argument that federal courts should utilize this statute to confer jurisdiction and decide child support orders would violate nearly all the traditional "rights-creating" requirements identified by the Supreme Court. As noted above, there is no indication that the statute itself was intended to benefit Plaintiff in particular. *Cuvillier v. Taylor*, 503 F.3d 397, 406 (5th Cir. 2007) (construing the child support provisions of Title IV-D, and noting that "individuals may be beneficiaries even though Congress did not confer a right on them."). The statute itself does not establish individual rights with sufficient specificity so that they are capable of enforcement by the federal courts. *Blessing v. Freestone*, 520 U.S. at 340-41. That a particular parent may rebut the projected support guidelines by a standard that is left to be developed by the states, certainly falls under the category of "vague and amorphous." *Id.* Further, the enforcement statute provided for in the support section of Title IV-D is limited to lawsuits by states, and only where there has been preapproval by the Secretary of Health and Human Services. 42 U.S.C. §§ 652(a)(8) & 660.

Accordingly, the Complaint as presently pled does not identify a particular right created by a federal statute enforceable under section 1983, and therefore it should be dismissed at this initial stage. However, even if an enforcable federal right were identified, this case runs afoul of other exceptions to federal court jurisdiction.

### 1. The Domestic Relations Exception

Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside federal court jurisdiction. *Marshall v. Marshall*, 547 U.S. 293, 308 (2006). This exception is based upon a policy dictating that the states have traditionally adjudicated marital and child custody disputes, developing "competence and expertise in adjudicating such matters, which federal courts lack." *Thomas v. N.Y. City*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993). Specifically, the Supreme Court has recognized that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (internal quotation marks omitted) (citation omitted); *Sobel v. Prudenti*, 25 F. Supp. 3d 340, 353 (E.D.N.Y. 2014) (the domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees") (internal quotation marks omitted) (citation omitted); *see also Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967). Therefore, as the present *pro se* Complaint seeks to overturn a child support decision of the St. Lawrence County Family Court, the federal courts lack jurisdiction to hear that claim, and it should be dismissed. *Amato v. McGinty*, 2017 WL 4083575, at *5 (N.D.N.Y. Sept. 15, 2017); *see also McArthur v. Bell*, 788 F. Supp. 706, 708-09 (E.D.N.Y. 1992) ("[T]o decide the instant case, this Court would be forced to re-examine and re-interpret all the evidence brought before the state court in the domestic relations proceedings. . . . That is not the role of this Court.").

*2. The Rooker-Feldman Doctrine*

A dismissal pursuant to the *Rooker-Feldman* doctrine is for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Remy v. New York State Dep't of Taxation and Finance*, 507 Fed. Appx. 16, 18 (2d Cir. 2013). This doctrine "divests federal courts of jurisdiction to consider suits which seek to overturn state court judgments." *Fernandez v. Turetsky*, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The doctrine also "bars federal courts from considering claims that are 'inextricably intertwined' with a prior state court determination." *Id.* (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999)).

There are four requirements to the application of *Rooker-Feldman*: (1) "the federal-court plaintiff must have lost in state court"; (2) the plaintiff's injuries must have been caused by a state court judgment; (3) the plaintiff must be asking the federal court to review and reject the state court's judgment; and (4) the state-court judgment must have been rendered prior to filing the federal court action. *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005). Here, Plaintiff is challenging the support judgment entered against him, and therefore all four elements of *Rooker-Feldman* are present in this case, and the matter should be dismissed. *Fernandez v. Turetsky*, 2014 WL 5823116, at *4 (E.D.N.Y. Nov. 7, 2014), *aff'd*, 645 Fed. Appx. 103 (2d Cir. 2016) ("Courts have repeatedly invoked the doctrine in cases, like the one currently before the Court, in which plaintiffs challenge family court decrees setting child support arrears.") (collecting cases); *see also Dinsio v. Appellate*

*Div., Third Dep't,* 2017 WL 3016832, at *10-12 (N.D.N.Y. July 14, 2017), *reconsideration denied*, 2018 WL 1156005 (N.D.N.Y. Mar. 5, 2018).

### 3. *Younger Abstention*

In *Younger v. Harris,* the Supreme Court held that federal courts must abstain from exercising jurisdiction over claims, seeking declaratory or injunctive relief, that implicate ongoing state proceedings. 401 U.S. 37, 43-44 (1971). The Supreme Court held that when there is a parallel criminal proceeding in state court, the federal court must refrain from enjoining the state prosecution. *Id. Younger* abstention is triggered only by three categories of state court proceedings: (1) state criminal prosecutions; (2) "civil proceedings that are akin to criminal prosecutions"; and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013). In *Sprint*, the Court used state-initiated custody proceedings as an example of civil proceedings which are akin to criminal proceedings. *Id.* at 79 (citing *Moore v. Sims*, 442 U.S. 415, 419-420 (1979) (state-initiated proceeding to gain custody of children allegedly abused by their parents)); *see also Davis v. Baldwin*, 594 Fed. Appx. 49, 51 (2d Cir. 2015) (summary order) (same). In this case Plaintiff specifically seeks injunctive relief "restraining the Defendant . . . from any further violations of Title IV-D." Compl. at ¶ 68(7). Such relief would make little sense, or be moot, if proceedings were not ongoing in Family Court. Accordingly, to the extent that the child support issues are continuing in Family Court, the Court should abstain from interfering with that process. *See, e.g., Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 357 (E.D.N.Y. 2004) (applying *Younger* abstention in child

support matter); *Lomtevas v. New York State*, 2003 WL 22937688, at *2 (E.D.N.Y. Nov. 13, 2003) (same).

### C. Plaintiff's First Amendment Right of Access Claim

Plaintiff's Second Cause of Action, also seeking declaratory relief, alleges that Plaintiff's inability to challenge, in Family Court, the presumptive child support award calculated under New York States' child support guidelines, violates his First Amendment right of access to the courts. Compl. at ¶¶ 49-67. The Supreme Court has generally recognized this type of claim. *See Boddie v. Connecticut*, 401 U.S. 371, 380-81 (1971) ("... the State's refusal to admit these appellants to its courts, the sole means in Connecticut for obtaining a divorce, must be regarded as the equivalent of denying them an opportunity to be heard upon their claimed right to a dissolution of their marriages, and, in the absence of a sufficient countervailing justification for the State's action, a denial of due process."). As the Supreme Court has further articulated, however, a backward-looking right of access claim generally alleges that official action is presently denying the plaintiff the opportunity to litigate his case, and seeks to remove that frustrating condition. *Christopher v. Harbury*, 536 U.S. 403, 413 (2002). Of course, due process is not necessarily violated every time a defendant in a civil case does not have a merits hearing. The Supreme Court has noted as an example that this may occur where a defendant does not timely respond and a default is entered. *Boddie v. Connecticut*, 401 U.S. at 375-78.

In the present case it is difficult to discern exactly what Plaintiff's right of access claim really is, and as such Plaintiff's second cause of action fails to state a claim. In the

event that Plaintiff is resting his claim upon the rebuttable presumption set forth in 42 U.S.C. § 667(b)(2), as noted *supra,* there are no actionable individual federal rights that flow from that statute. Plaintiff cannot simply resurrect a faulty "laws" action by construing it as a right of access claim.

While the Court would normally allow Plaintiff an opportunity to replead a cause of action that fails to state a claim, any such right of access claim would also run contrary to the jurisdictional limitations previously detailed in this opinion, including the domestic relations exception and the *Rooker-Feldman* doctrine. *See Kneitel v. Palos*, 2015 WL 3607570, at *4-5 (E.D.N.Y. June 8, 2015) ("However characterized, Plaintiff's claims fundamentally challenge state court child support orders."). In addition, to the extent Plaintiff seeks to use this claim to essentially appeal unfavorable determinations in state court, "[d]istrict courts 'do not have jurisdiction . . . over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional,' and '[r]eview of those decisions may be had only' in the Supreme Court of the United States." *Cassidy v. Madoff*, 2018 WL 5792786, at *5 (N.D.N.Y. Nov. 5, 2018) (quoting *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983)). Therefore, Plaintiff's second cause of action should be dismissed.

### D. Plaintiff's State Law Claims

Plaintiff attempts, possibly, to assert state law claims against Judge Morris based upon alleged violations of the New York State Family Court Act and the Domestic Relations Law. Compl. at ¶¶ 56-59. In light of the recommendation that all of Plaintiff's federal claims

against Judge Morris be dismissed, the Court also recommends that the District Court decline to exercise supplemental jurisdiction over Plaintiff's state law and state constitutional claims, without prejudice, subject to refiling in state court and to reconsideration in the event the District Court does not accept this Court's recommendation for dismissal of Plaintiff's federal claims. *See Kolari v. New York Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006); *Medina v. Cuomo*, 2015 WL 13744627, at *15 (N.D.N.Y. Nov. 9, 2015), *report and recommendation adopted*, 2016 WL 756539 (N.D.N.Y. Feb. 25, 2016).

### III. CONCLUSION

Plaintiff requests that the federal court review his state court support award in light of his particular financial condition and conclude that the Family Court judge's determination was in error. This it should not, and cannot, do. Plaintiff points to the federal statute regarding guidelines for child support, but that statute creates no individually enforceable rights. Plaintiff's First Amendment access to the courts claim is factually and legally defective. Having considered the viability of the Complaint under the applicable standard of review, the Court has concluded that Plaintiff fails to state a claim upon which relief could be granted and that the Court lacks jurisdiction to hear the matter. As such, his entire Complaint is subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

In light of his *pro se* status, the Court would typically, prior to outright dismissal, afford Plaintiff the opportunity to amend his Complaint in order to state cognizable claims. However, upon completing my review of the Complaint, I determine that any such amendment of any federal claims over which the Court would have jurisdiction would be

futile in light of the facts presented and the legal obstacles outlined above. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [the plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."); *Davis v. Kushner*, 2014 WL 5308142, at *4 (N.D.N.Y. Oct. 16, 2014) ("[T]he domestic relations exception bars this Court from exercising its jurisdiction over the instant action. Furthermore, granting [Plaintiff] an opportunity to amend his complaint would be futile because from the face of the complaint, the Court lacks subject matter jurisdiction.").

Thus, for the reasons stated herein, it is hereby

**RECOMMENDED**, that the entire Complaint be **dismissed**, pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief can be granted; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[5] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN**

---

[5] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**(14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: April 10, 2019
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge